**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| MARTIN L. KENT,                                )<br>                                                       )<br>            Plaintiff,                            )<br>                                                       )  No. 9:19-cv-1383-DCN<br>     vs.                                             )<br>                                                       )  **ORDER**<br>KEVIN N. HENNELLY,                   )<br>                                                       )<br>            Defendant.                        )<br>_____) | |

The following matter is before the court on plaintiff Martin L. Kent's ("Kent") motion to amend scheduling order, ECF No. 50, and defendant Kevin N. Hennelly's ("Hennelly") motion to compel and award fees, ECF No. 51. For the reasons set forth below, the court grants in part and denies in part Kent's motion to amend the scheduling order and grants Hennelly's motion to compel. The court holds Hennelly's request for fees and costs in abeyance.

### I.  BACKGROUND

Unlike most pure discovery disputes, the court's resolution of the latest squabble between Kent and Hennelly warrants a detailed review of this action's underlying facts and protracted procedural history. This lawsuit involves allegations of defamation and false light invasion of privacy brought by Kent against Hennelly. Kent is the president and CEO of The United Company, which is the parent company of Scratch Golf, LLC. Hennelly is "a disabled former utility worker" who lives in Beaufort County, South Carolina. ECF No. 50-1 at 1. Scratch Golf owns the Hilton Head National Golf Course (the "Property") in Beaufort County, South Carolina. In July 2016, Scratch Golf submitted an application to Beaufort County to amend the rezoning of the Property

1

("Rezoning Application").  On May 22, 2017, the Beaufort County Council denied the Rezoning Application.

Kent alleges that Hennelly made a post on Facebook and a comment on the website of the Island Packet, a local newspaper, that contained various defamatory statements about him, in an effort to imply that Kent is corrupt or may have committed crimes.  Kent attached images of those statements to his amended complaint, but he only references the allegedly defamatory portions in his amended complaint.  Those posts and their statements are below.

> Comment 1
> May 14, 2017 comment on the online version of a May 12 article from The Island Packet newspaper ("Island Packet Article"), ECF No. 22-1, "Hilton Head National developers: Why golf lost its swing there and what the future holds" ("Island Packet Comment")
>
> Statement:  It looks like they left out a few pertinent facts.  The most glaring is the corrupt people involved.  This guy Kent was Chief of Staff to the corrupt Governor of Virginia. He has never built a swing set never mind a 300m dollar City!!!  James Woodrow McGlothlin gave the corrupt Governor McDonald of Virginia wife a "no show" job.  The McDonalds never reported income, $36,000.  These guys . . . will break every rule in the book to get a government favor or handout.
>
> Comment 2
>
> Portion of May 23, 2017 post by Kent on his own Facebook Page, ECF No. 22-2 ("May 23 Facebook Post")
>
> Statement: The Island Packet gets an "incomplete" grade on their coverage of the issue.  For some reason they refused to print the documented corruption of the owners of the United Company.  Martin Kent and James McGlothlin were up to their eyeballs in the recent scandals in Virginia with the Governor and his wife.

As a result of these comments, Kent decided to file suit against Hennelly.  So too did James W. McGlothlin ("McGlothlin"), a shareholder in United Company and the chairperson of its board.  Accordingly, McGlothlin sued Hennelly in federal court in the

Middle District of Florida, and, subsequently, Kent sued Hennelly in the Eastern District of Tennessee. Critically, and this court has previously stressed the importance of this fact, Kent and McGlothlin are represented by the same attorney. See ECF No. 31 at 4. Fighting a war on two fronts, Hennelly was forced to retain counsel in both Florida and Tennessee.

Unsurprisingly, because Hennelly was and remains a South Carolina citizen whose conduct occurred in South Carolina, McGlothlin's Florida action was dismissed for lack of personal jurisdiction. The Florida district court gave McGlothlin two weeks to amend his complaint to sufficiently allege the facts necessary for the court to establish personal jurisdiction over Hennelly, but McGlothlin was apparently unable to do so, resolving instead to voluntarily dismiss the Florida action and refile an identical action in this court, McGlothlin v. Hennelly, No. 18-cv-246 (the "McGlothlin case"). Again unsurprisingly, Kent's Tennessee action was dismissed for lack of personal jurisdiction over Hennelly. However, instead of immediately refiling in South Carolina like McGlothlin did, Kent appealed the Tennessee district court's dismissal to the Sixth Circuit Court of Appeals. Throughout the appeal, Hennelly's counsel continuously suggested that Kent dismiss the appeal and refile in South Carolina, but Kent's counsel refused. As such, Hennelly had to pay his lawyers to brief the issues on appeal, participate in mediation in good faith, and prepare for oral argument that was scheduled for March 21, 2019. Then, on March 15, 2019, Kent's counsel sent Hennelly's counsel an email indicating that Kent wanted to dismiss the appeal and refile the action in South Carolina. Hennelly's counsel objected due to the time and money that they had already spent as a result of the appeal, but Kent nevertheless filed a motion to voluntarily dismiss

3

the appeal, and the Sixth Circuit granted it. On May 10, 2019, Kent filed his case with this court, bringing causes of action for defamation per se, defamation per quod, and false light invasion of privacy. ECF No. 1, Compl.

In June and July 2019, Hennelly filed a motion to stay and award fees and a motion to dismiss, respectively. ECF Nos. 9 and 18. With respect to his request for fees, Hennelly explained that "Kent's complaint include[d] allegations already found to be non-actionable by this Court" in the McGlothlin case. ECF No. 9-1 at 6.[1] In other words, Kent's attorney included certain claims in Kent's initial complaint even though this very court had just recently rejected those exact claims in the McGlothlin case. Kent's attorney argued that his inclusion of the previously rejected claims was proper because this case and the McGlothlin case involve separate plaintiffs. The court rejected that contention outright and unambiguously:

> Kent argues that he was justified in filing his complaint that contained allegations that the court dismissed in the McGlothlin case because of the personal differences between Kent and McGlothlin. This may be more convincing if the defamation allegations dismissed by the court in the McGlothlin case were unique to McGlothlin, but they weren't. [ . . . ] [The court's findings in the McGlothlin case are] not unique to McGlothlin, . . . yet for some unknown reason, Kent included the same allegation[s] in his original complaint. The same attorney represents McGlothlin and Kent; therefore, it is crystal clear that Kent's attorney knew of this court's ruling in the McGlothlin case when he filed this action.

ECF No. 31 at 10.

---

[1] Hennelly also argued that the requested award was justified by Kent's pursuit of the Tennessee action and subsequent voluntary dismissal on the eve of oral argument. The court agreed that Kent's counsel's conduct in Tennessee was "questionable," but ultimately afforded Kent's counsel the benefit of the doubt, holding that the law did not authorize an award of fees based on Kent's counsel's dubious tactics. ECF No. 31 at 8–9.

Although the court determined that it lacked a legal basis from which to award Hennelly fees and costs, it held:

> Nevertheless, [Kent's knowing submission of previously rejected claims] may give rise to sanctions under Rule 11 of the Federal Rules of Civil Procedure. Pursuant to Rule 11, when an attorney presents a pleading to the court, he "certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the claims . . . are warranted by existing law." Based on the information before the court, it appears that Kent filed claims that were not warranted under existing law because this court had previously found those exact claims to be untenable.

Id. at 11 (internal citations omitted). As such, the court ordered Kent's attorneys "to show cause as to why the original filing of his complaint does not violate Rule 11(b)[.]" Id.

Ultimately, after Kent responded to the show cause order, the court spared the rod, finding sanctions "not warranted." ECF No. 35 at 1. Still, the court offered the following words of caution: "While the court does not impose sanctions for Kent filing claims in this action that were identical to claims already dismissed as legally untenable in a related action, the court strongly discourages this practice in the future." Id. And the court again explicitly rejected Kent's contention that findings in the McGlothlin case could not be imputed to his actions in this case: "While Kent remains insistent that the claims were different because the plaintiffs were different, the court explained why that argument fails in its previous order on [ ] Hennelly's motion to stay and motion to dismiss." Id. at 1 n.1.

Now, Kent and his attorney's tactics have once again emerged at the forefront of this lawsuit. On January 6, 2021, Kent filed a motion to amend the scheduling order. ECF No. 50. On January 7, 2021, Hennelly responded to the motion, ECF No. 52, and

the next day, Kent replied, ECF No. 53. On January 7, 2021, Hennelly filed a motion to compel. ECF No. 51. On January 21, 2021, Kent filed a response, ECF No. 55, to which Hennelly replied, ECF No. 57. The court held a video-conference hearing on the matter on February 2, 2021.[2] The motions are fully briefed and ripe for review.

## II. STANDARD

### A. Motion to Amend Scheduling Order

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Dilmar Oil Co. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C.), aff'd sub nom. Dilmar Oil Co. v. Federated Mut. Ins. Co., 129 F.3d 116 (4th Cir. 1997). Because "[s]cheduling orders are necessary tools in managing the district court's caseload" and "critical to restoring integrity in court proceedings," courts should be slow to indulge offhand requests to amend them. Potomac Elec. Power Co. v. Elec. Motor Supply, Inc., 190 F.R.D. 372, 376 (D. Md. 1999). Further, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id. Upon a showing of the movant's good cause, the court has broad discretion in resolving a request to amend the scheduling order. Dilmar, 986 F. Supp. at 980.

---

[2] At the hearing, the court heard arguments from Hadley Dreibelbis and Philip Golodetz, two law students from Duke University School of Law's First Amendment Clinic. Impressed with the poise of their presentation and the acuity of their arguments, the court congratulates Ms. Dreibelbis and Mr. Golodetz on what is sure to be the first of many successful court appearances.

### B. Motion to Compel

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n. 16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Service, 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### III. DISCUSSION

#### A. Motion to Amend Scheduling Order

This action's initial scheduling order set a deadline for discovery of November 6, 2020. ECF No. 36. In light of the global and ongoing COVID-19 pandemic, the parties agreed to extend that discovery deadline to February 8, 2021. ECF No. 49. Now, in his motion, Kent seeks to extend the scheduling order deadline again, this time for an additional 120 days. As the court explains below, although Kent cannot demonstrate good cause for his request, the court must grant it as a practical matter, at least in part, because the delays caused by his conduct have hindered the parties' ability to complete discovery within the current deadlines.

Kent argues that an amendment to the scheduling order is necessary because the pandemic has limited his ability to take and attend in-person depositions. As such, Kent contends, the court should extend the current deadlines 120 days, until a time when "the pandemic will be in a more controlled circumstance for in-person depositions[.]" ECF No. 50 at 2. The court has ample reason to deny Kent's request. First, Kent notes that a viable alternative to an in-person deposition—a virtual deposition—is readily available to the parties. Nevertheless, Kent's motion is based on his "preference" to hold the desired depositions in person: "Notwithstanding the availability of electronic means to conduct the applicable depositions, Mr. Kent and his counsel prefer that <u>all</u> depositions in this matter be held in-person." <u>Id.</u> at 1 (emphasis added).[3] Kent's preference for in-person depositions is an insufficient reason to delay this case for an additional six months. As

---

[3] At the hearing on the motions, Kent's counsel retreated from this position and explained that his preference is now to depose only Hennelly in person, not all witnesses.

8

the law makes clear, scheduling orders are not subservient to the causal whims of spendthrift parties; a party wishing to amend a scheduling order must demonstrate that the deadlines therein "cannot be met despite a party's diligent efforts." Dilmar Oil, 986 F. Supp. at 980. The pandemic has required each of us to make sacrifices, small and large, to ensure that our systems continue to function. With respect to the justice system, this duty often requires participants to operate under less-than-ideal conditions. Under these difficult circumstances, Kent's lawyers' refusal to employ a widely used alternative to their preferred course of action does not justify grinding the wheels of justice to a halt.[4] By comparison, Kent's participation in a virtual deposition, despite his preference for an in-person deposition, strikes the court as a relatively small sacrifice, especially since Kent's lawyers have taken Hennelly's deposition in person in the McGlothlin case. Kent and his counsel's unwillingness to agree to a virtual deposition (which they agree is a much less expensive alternative to in-person depositions) evinces a total lack of effort to meet the current scheduling order deadlines, let alone good cause to justify an amendment.

An equally legitimate ground to deny Kent's motion, the court cannot conclude that the motion is made in good faith. Were the court unfamiliar with this case, it would be more sympathetic to Kent's request. Unfortunately, the court is all too familiar with the litigation tactics employed in this case and its related predecessor. The court described above in detail, as well as in a previous order, the "questionable conduct" of Kent and his attorneys throughout this litigation. ECF No. 31 at 8. Hennelly has argued

---

[4] Indeed, the court held its hearing on the motions via video conference, as it has routinely done in other cases since the pandemic's inception.

from the beginning that such conduct is part of a strategy to maximize the costs and fees Hennelly had had to incur and to delay this action at every turn.  The court has already noted its "skeptic[ism]" as to the legitimacy of Kent's counsel's tactics.  Id.  While stopping short of determining that the instant request is an act of bad faith, the court has little difficulty concluding that it is not justified by good cause.  As such, the court is reluctant to extend the same courtesy to Kent that it might normally afford.  Therefore, the court rejects Kent's proposed amendment.[5]

Nevertheless, the eleventh-hour motion practice birthed by Kent's motion to amend has delayed the parties' scheduling of the relevant depositions, such that holding them prior to the current deadline is impossible.  Further, as the court discusses below, Kent's objections to various discovery requests have caused additional delay and deprived Hennelly of relevant information and documents about which he may want to ask Kent during his deposition.  As such, the court extends the discovery deadlines by 60 days from the date on which Kent completely answers Hennelly's discovery requests in accordance with this order to ensure that the parties have enough time to conduct discovery but without delaying the action unnecessarily.  Accordingly, Kent's motion to amend the scheduling order is granted in part and denied in part, and the scheduling order deadlines shall be extended as outlined above.

---

[5] Kent also argues that the parties cannot hold virtual depositions because Hennelly has not moved to do so under Fed. R. Civ. P. 30(b)(4).  At the hearing, Kent indicated that the court may order the parties to conduct remote depositions on the record before it, in the absence of Hennelly's formal filing of a motion.  Accordingly, the court orders that the depositions take place by remote means.

### B. Motion to Compel

In his motion, Hennelly asks the court to compel responses to various discovery requests that seek documents and information related to Kent's alleged status as a public or limited public figure. Hennelly also seeks to compel discovery requests seeking evidence of the "substantial truth" of the allegedly defamatory statements. Kent lodged a number of objections to these requests, namely that they are "overly broad," see, e.g., ECF No. 51-2 at 12, "not reasonably related to any claim or defense," see e.g., id. at 13, or "not germane to the instant matter," see, e.g., ECF No. 51-5 at 4.[6] In other words, Kent's primary objection is to the relevance of the sought discovery. Kent also stated in some of his supplemental responses that "recollection of any such instances is difficult." See, e.g., ECF No. 51-5 at 5. In his response to the motion to compel, Kent argues that his objections "were well-taken," ECF No. 55 at 1, and that Hennelly "already has everything he is looking for," id. at 2. Hennelly also asks the court to award him the fees incurred in bringing the motion.

First, the court addresses Kent's argument that he is not required to respond to Hennelly's discovery requests because Hennelly already has all the materials he seeks. Kent explains:

> As part of the discovery in Mr. McGlothlin's case, [Hennelly] and his counsel were able to obtain thousands of pages of information and documents regarding both Mr. McGlothlin and Mr. Kent – chiefly as a result of their personal research; and through a deposition of Mr. McGlothlin . . . [Hennelly]'s prolific ability to dig up documents and other information that relate to Mr. Kent continues to be impressive. So much so, that [Hennelly] already has more information and documents regarding the topics at hand than Mr. Kent himself.

---

[6] Kent seems to have abandoned his objections that many of the discovery requests are "overly broad," as he fails to argue the same in his response to the motion to compel. Therefore, the court need not address them.

Id. at 3 (emphasis in original). In other words, Kent argues that because Hennelly has done his own research into the matter, including research he did in the McGlothlin case, and has obtained some evidence on the relevant topics, Kent is absolved from complying with related relevant discovery requests. Put another way, Kent believes he does not have to turn over the requested evidence because Hennelly has already obtained some evidence on the same topic in the McGlothlin case.

This argument borders on the absurd and, unsurprisingly, is completely devoid of any legal support. Of course, a party may not decline discovery requests based on its own theory that the requesting party has sufficient evidence on the topic.[7] This argument falls particularly flat in light of the fact that Kent's <u>entire</u> production to Hennelly in this matter consists of a <u>single</u> email chain and two exhibits that were attached to Kent's complaint. See ECF No. 57-1. Kent has spent a lot of time and money pursuing this matter through multiple jurisdictions and various levels of appeal; the court can see no legitimate reason why he now objects to complying with simple discovery requests on the basis that such discovery may be, in his opinion, superfluous.[8] The question of whether Hennelly has all the evidence he requires is not one for Kent to decide. The rules of

---

[7] To the extent that Kent argues that there is no evidence responsive to certain disputed requests for production, the court notes that, even where a respondent is not in possession of responsive documents, "the requesting party is entitled to a response" by the respondent stating that a reasonable search produced no responsive documents. <u>Reid v. Hasty</u>, 2009 WL 10711916, at *7 (N.D. Ga. Jan. 30, 2009), report and recommendation adopted, 2009 WL 10711953 (N.D. Ga. Mar. 2, 2009). Objections on unrelated bases are not a substitute for a statement that certain documents are not within the responding party's possession or control.

[8] The court finds it particularly telling that Kent and his attorneys elected to expend resources engaging in motion practice over this discovery dispute rather than complying with the allegedly unnecessary discovery requests in the first place.

procedure clearly compel a party to respond to discovery requests regardless of whether the opposing party's evidence amounts to mountains or molehills. As such, the court rejects the first of Kent's objections.[9]

Next, the court addresses the relevance of the requested materials and information. As the court mentioned above, Kent has objected to two categories of evidence as irrelevant: documents and information related to Kent's alleged status as a public or limited-public figure, and evidence relating to the "substantial truth" of the allegedly defamatory statements. The court addresses each in turn, finding both categories relevant and compelling Kent to respond with respect to each.

"Relevant" evidence is evidence that "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. As the court explained in a previous order, for a public figure or limited-purpose public figure to succeed in a defamation claim, he or she must prove that the statement was made with actual malice. New York Times Co. v. Sullivan, 376 U.S. 254, 279 (1964). "[T]he issue of whether the plaintiff is a public figure is a question of law for the court," Fitzgerald v. Penthouse Int'l, Ltd., 691 F.2d 666, 669 (4th Cir. 1982), which requires the court to consider "the facts taken as a whole," Foretich v. Capital Cities/ABC, Inc., 37 F.3d 1541, 1551 (4th Cir. 1994) (quotations omitted). As such, a

---

[9] Relatedly, Kent seems to suggest that he withdrew some of his initial objections in supplemental responses to many of Hennelly's discovery requests. The court is befuddled by this assertion. By way of example, Kent's initial response to Hennelly's Interrogatory No. 22 stated: "Plaintiff objects to this Interrogatory because it is not reasonably related to any claim or defense[.]" ECF No. 51-2 at 14. Then, in supplementing his response, Kent stated that the requested information "is not germane to the instant matter." ECF No. 51-5 at 5. Changing the wording of a relevancy objection does nothing to withdraw that objection. Accordingly, the court does not know what to make of Kent's suggestion.

defamation plaintiff's status as a public figure or limited-public figure is undeniably relevant to a defamation claim.

Kent argues that his potential status as a public figure is not relevant in this case because, in the McGlothlin case, the court found that McGlothlin was not a public figure. This argument has two fatal flaws. First, in the McGlothlin case, the court determined that McGlothlin was not a public figure after considering <u>all</u> the relevant evidence. McGlothlin, No. 18-cv-246, ECF No. 77 at 9–13. In other words, the court specifically confirmed that evidence related to McGlothlin's status as a public figure was relevant, and indeed critical, to its determination of the issue. Neither party has moved for summary judgment on that issue in this case, and, when either party does, the court will consider <u>all</u> the evidence tending to show or disprove Kent's status as a public figure. Because the issue of Kent's status as a public figure is still disputed in this matter, evidence of the same clearly remains relevant. And second, the court's finding that McGlothlin was not a public or limited-public figure does not compel the same result with respect to Kent. The relevant inquiry focuses specifically on the plaintiff as an individual, including, as examples, his or her "role of prominence," "influence," and "access to channels of effective communication." Fitzgerald, 691 F.2d at 668. Despite their similar litigious tendencies, McGlothlin and Kent remain separate individuals with separate public lives, meaning that the court's finding with respect to the former does not compel a finding with respect to the latter. Thus, the court finds evidence related to Kent's status as a public figure to be relevant and compels Kent to <u>fully</u> respond to the discovery requests seeking the same.

Similarly, the court finds that evidence tending to shed light on the potential "substantial truth" of the allegedly defamatory comments is relevant. In South Carolina, the "truth of the matter or substantial truth is a complete defense to a claim for defamation." A Fisherman's Best, Inc. v. Recreational Fishing All., 310 F.3d 183, 196 (4th Cir. 2002) (citing WeSav Fin. Corp. v. Lingefelt, 450 S.E.2d 580, 582 (S.C. 1994)). As such, evidence of the events on which Hennelly based his allegedly defamatory comments is relevant. For example, evidence of Kent's association with the scandalous conduct of the former Governor of Virginia, Bob McDonnell, is entirely relevant to whether Hennelly's comments were rooted in truth.[10]

Finally, the court addresses one last objection prevalent in Kent's responses. With respect to no less than fourteen discovery requests, Kent states that he "cannot recollect" certain information but will "seasonably supplement [his] [r]esponse should his recollection be refreshed to the contrary." See, e.g., ECF No. 55 at 6, 7, 8, 11. Federal Rule of Civil Procedure 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of" the discovery rules. Fed. R. Civ. P. 26(g), Advisory Committee Notes to 1983 Amendments. That duty charges an attorney to make "a reasonable effort," including reasonable investigation into relevant matters, "to assure that the client has provided all the information and documents responsive to the discovery demand." Id. As Kent's counsel is no doubt aware, a discovery request compels in the respondent more than a moment's

---

[10] Kent objected to related discovery requests by stating that "Mr. Kent's public service related to Governor McDonnell has no connection to Beaufort County, South Carolina." ECF No 51-2 at 42. Based on the above law, however, Kent's association with McDonnell has a clear connection, and indeed relevance, to his lawsuit.

15

reflection. In supplementing his responses according to the instructions of this order, the court orders Kent to undergo a diligent investigation before responding to the relevant requests and reminds him that the discovery rules are specifically "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." Id.

  The court would be remiss not to point out that it rejects many of Kent's lawyers' arguments today for the second time. As Hennelly explains in his motion to compel, Kent has refused to answer discovery requests "identical to ones for which this Court compelled responses in the related McGlothlin case." ECF No. 51-1 (citing Interrogatory Nos. 7, 11, 12, 16, and 19). In other words, Kent's attorney submitted objections and arguments in this case identical to those that the court has previously rejected in the McGlothlin case. Indeed, the record shows that Kent's attorney objected on the basis of relevance to identical discovery requests in the McGlothlin case, and that the court rejected those objections and ordered counsel to respond. McGlothlin, No. 18-cv-246, ECF No. 58. As such, Kent knows that many of the objections he lodged and continues to defend are untenable as a matter of law. As the court explained above, Kent has employed the same questionable tactics before.

  To review, Kent's attorney included claims in Kent's initial complaint that the court had previously rejected as untenable in the McGlothlin case. In response, the court made abundantly clear that Kent's counsel may not present arguments in this case identical to those presented and rejected by this very court in the McGlothlin case. As the court stressed in a previous order, "the same attorney represents McGlothlin and Kent; therefore, it is crystal clear that Kent's attorney knew of this court's ruling in the McGlothlin case when he filed this action." ECF No. 31 at 10. Kent's attorney's

knowing inclusion of untenable claims prompted the court to order him to show cause as to why his submissions to the court were not in bad faith and did not merit sanctions. At a hearing on the rule to show cause, Kent's counsel again argued that the court's findings in the McGlothlin case do not apply to his conduct in this case. And again, the court decried that stance: "While Kent remains insistent that the claims were different because the plaintiffs were different, the court explained why that argument fails in its previous order[.]" ECF No. 35 at 1 n.1. The court ultimately afforded Kent's counsel the benefit of the doubt and declined to impose sanctions.

Here, Kent's counsel again engages in the same transgressive conduct that nearly resulted in sanctions less than a year ago. And this time, the court has no remaining doubts of which to give Kent's counsel the benefit. As the court has made abundantly clear, Kent's counsel's presentation of arguments in this case that the court has previously rejected as untenable in the McGlothlin case "may give rise to sanctions under Rule 11 of the Federal Rules of Civil Procedure." ECF No. 31 at 11. Kent's counsel, once again, has done just that—he has lodged objections to discovery requests in this case identical to ones presented to and rejected by the court in the McGlothlin case. And he has doubled down on the validity of those objections in the instant motion practice. This time, the court hesitates to temper justice with mercy. Hennelly's motion requests that the court "award any fees . . . appropriate under the circumstances to ensure that [Kent] both fulfills his discovery obligations and does not further delay the timely resolution of this matter" pursuant to Fed. R. Civ. P. 37(a)(5)(A); the court resolves to hold that request in abeyance. ECF No. 51-1 at 4.

In sum, the court grants Hennelly's motion to compel and orders Kent to produce accurate and complete responses, in accordance with the letter and spirit of the rules of procedure and the instructions of this order, to the following discovery requests: Interrogatories Nos. 7, 11, 12, 14, 15,[11] 16, 19, 20, 22, 23, 24, and 25; Requests for Admission Nos. 23, 24, 25, 26, 27, 28, 29, and 30; Requests for Production Nos. 14, 17, 18, 19, 20, 23, 24, 29, 30, and 31.  Further, the court extends the scheduling order deadlines for a period of 60 days beginning on the date Kent fully responds to Hennelly's discovery requests in accordance with this order.  The court holds Hennelly's request for costs and fees in abeyance for further consideration and, to aid in that consideration, orders Hennelly to file an affidavit detailing the costs and fees associated with litigating these two motions, including the hourly rate of the legal work, the time expended, and related expenses if any.

---

[11] Hennelly has agreed to limit the scope of Interrogatory No. 15 to ten years and "to remove the inquiry related to Bristol Resort & Casino." ECF No. 51-1 at 11 n.9. The court orders Kent's compliance with this request subject to that limitation.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS IN PART AND DENIES IN PART** the motion to amend the scheduling order, **GRANTS** the motion to compel, and **HOLDS IN ABEYANCE** the request for fees and costs.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 8, 2021**
**Charleston, South Carolina**

19